UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| CONCRETE SUPPLY CO., LLC,<br><br>    Plaintiff,<br><br>vs.<br><br>MURCHISON FAMILY PROPERTIES, LLC,<br><br>    Defendant. | **COMPLAINT**<br><br>CASE NO: 2:26-cv-00101-DCN |

NOW COMES Plaintiff Concrete Supply Co., LLC ("CSC"), by and through the undersigned counsel, complaining of Defendant Murchison Family Properties, LLC ("Defendant"), alleges and states as follows:

**PARTIES**

1. Plaintiff CSC is a North Carolina limited liability company with its principal office and place of business located in Charlotte, North Carolina. CSC consists of two (2) members: (a) Concrete Supply Holdings, Inc., a North Carolina corporation with its principal office and place of business in Charlotte, North Carolina; and (b) Cemex Construction Materials Atlantic, LLC, a Delaware limited liability company with its principal office and place of business in West Palm Beach, Florida. No member of Cemex is a citizen or resident of South Carolina.

1

2. CSC, through a network of strategically located concrete plants and related facilities, provides ready-mixed concrete products and services to customers throughout North Carolina and South Carolina.

3. Defendant is a South Carolina limited liability company with its principal office and place of business in Berkeley County, South Carolina.

4. Defendant is owned equally by two members, Hugh Murchison and Anna Cusick Murchison, both of whom are, upon information and belief, residents of Berkeley County, South Carolina.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship between the CSC and Defendant and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest, attorneys' fees, and costs.

6. Venue is proper in the United States District Court of the District of South Carolina because the events giving rise to the basis of this lawsuit occurred in this District and the Defendant is a resident of the District.

7. Venue and jurisdiction are proper in this Court.

## BACKGROUND

8. Defendant previously owned certain real property with the plat entitled "PLAT OF NEW PARCEL 2 & 3 A PORTION OF TMS: 046-00-00-023 OWNED BY DORCHESTER COUNTY WINDING WOODS COMMERCE PARK, DORCHESTER

COUNTY, SOUTH CAROLINA" and is recorded in Plat Book O at page 610 in the Register of Deeds Office for Dorchester County, South Carolina and is more particularly described at Deed Book 15134 pages 248-252 of the Register of Deeds Office for Dorchester County (the "Original Property").

9. On or around April 2024, CSC and Defendant entered into a Purchase Agreement for the sale of the Property whereby Defendant would subdivide the Original Property and CSC would purchase a portion of the Original Property from Defendant (the "Purchase Agreement").

10. On or around July 29, 2024, CSC and Defendant amended the terms of the Purchase Agreement by signing an amendment (the "Amendment") (the Purchase Agreement and the Amendment, collectively the "Purchase Contract").

11. At the time the Purchase Agreement was executed, the Purchase Agreement noted that "SELLER [Defendant] DOES NOT AS OF THE DATE OF THIS AGREEMENT OWN NEW PARCEL 3 AND SELLER'S OBLIGATIONS TO CONVEY THE PROPERTY TO PURCHASER IS CONTINGENT ON SELLER OBTAINING TITLE TO NEW PARCEL 3".

12. On or around June 6, 2024, Defendant obtained title to the Original Property identified as New Parcel 3.

13. CSC was notified that Defendant had acquired title to the Original Property shortly after the June 6, 2024 acquisition.

14. The Purchase Contract also required Defendant to commence and complete certain construction to and improvements of the Property (the "Original Work"), with such work to be completed within sixty days of all tenants having been vacated from the Property.

15. Further, the Purchase Contract and subsequent communications contemplated that the Original Work required to be performed by Defendant would include grading work on the Property pursuant to a grading schedule agreed upon by CSC and Defendant.

16. The parties agreed on a schedule for the Work to be completed.

17. The Original Work was not completed, even though the time to complete such Original Work has passed.

18. On or about December 2024, CSC and Defendant executed an Escrow Agreement (the "Escrow Agreement").

19. The Escrow Agreement contemplated that $450,000.00 of sale proceeds would be withheld by Defendant and paid to an Escrow Agent for certain construction and infrastructure repairs and costs (the "Infrastructure Work").

20. Standard Title, LLC ("Standard") is the Escrow Agent under the Escrow Agreement.

21. The Escrow Agreement contemplates that Defendant will be responsible for all such Infrastructure Work, including construction and infrastructure repairs and costs. Specifically, Paragraph 4 of the Escrow Agreement provides "[Defendant] shall be

4

responsible for all infrastructure costs, including those exceeding the infrastructure Escrowed Funds, and Escrow Agents' costs and fees."

22. Further, Paragraph 6 of the Escrow Agreement provides "CSC will not be responsible for any of the costs of completion of the Infrastructure."

23. The Escrow Agreement requires that all Infrastructure Work and those corresponding construction repairs will be completed no later than December 31, 2024.

24. On or about December 26, 2024, Defendant executed a Limited Warranty Deed conveying a portion of the Original Property to CSC. The Limited Warranty Deed conveying a portion of the Original Property to CSC was recorded on December 31, 2024. The portion conveyed to CSC is recorded in Deed Book 15672 Pages 94-98 of the Dorchester County Register of Deeds and is more particularly described as:

> ALL that certain piece, parcel or tract of land, situate, lying and being in Dorchester County, state of South Carolina, and being shown and designated as "NEW PARCEL 3A 9.10 AC" on a plat prepared by IPW Construction Group, LLC entitled "PLAT CREATING NEW PARCEL 3A A PORTION OF TMS: 059-00-00-141 OWNED BY MURCHISON FAMILY PROPERTIES, LLC WINDING WOODS COMMERCE PARK DORCHESTER COUNTY, SOUTH CAROLINA", dated June 26, 2024, and recorded August 15, 2024, in the Register of Deeds Office for Dorchester County in Plat Book 0, Page 844. Said parcel having such size, shape, dimensions, buttings and boundings as will by reference to said plat more fully and at large appear.
>
> SUBJECT to that certain pond easement and that certain road easement to be recorded simultaneously herewith in the Register of Deeds Office for Dorchester County.
>
> BEING a portion of the same property conveyed to the Grantor herein by deed of Dorchester County dated February 13, 2024, and recorded February 14, 2024, in the Register of Deeds Office for Dorchester County in Book

5

15134, at Page 248; and re-recorded in said Register of Deeds Office on June 7, 2024, in Book 15333, at Page 321.

TMS No.: 059-00-00-119.000

(the "CSC Property").

25. As of the date of filing this Complaint, Defendant has failed to complete the Infrastructure Work and corresponding construction repairs on the CSC Property as required by the Escrow Agreement.

26. On December 31, 2024, Defendant and CSC executed and recorded an Appurtenant Access Easement Agreement titled "APPURTENANT ACCESS EASEMENT AGREEMENT FOR THE CONSTRUCTION, USE AND MAINTENANCE AND REPAIR OF ACCESS ROAD 4" (the "Access Easement").

27. The Access Easement is recorded in the Dorchester County Registry at Book 15672, Pages 99–104.

28. The Access Easement provides that Defendant "shall construct an access road running along the common boundary line between the [Defendant's parcel] and [CSC's parcel] which road is approximately fifty feet (50') wide with twenty-five feet (25') being on each side of the common property line" (the "Access Road").

29. The Access Easement further provides that "[Defendant] shall be responsible for constructing and for the cost to construct the Access Easement as a private road to be used exclusively for the benefit of [Defendant] and [CSC], their successors and assigns."

30. The Access Easement is appurtenant, runs with the land, and is binding on the parties and their successors and assigns.

6

31. Despite these obligations, Defendant failed to construct the Access Road as required by the Access Easement.

32. Defendant's failure to construct the Access Road forced CSC to obtain access directly from the South Carolina Department of Transportation (the "SCDOT Curb Cut") to provide ingress and egress that should have been provided by the Access Road along the common boundary line, thereby imposing on CSC the burden and expense of securing curb-cut access in place of the easement road Defendant was obligated to build.

33. As a direct and proximate result of Defendant's breach of its obligation under the Access Easement, CSC has suffered harm, including incurring the burden and costs associated with facilitating and obtaining the SCDOT Curb Cut to ensure access to the CS Parcel.

34. The Access Easement contemplates enforcement by the parties and confers the right to attorneys' fees and costs to the prevailing party in any action to enforce its provisions, in addition to other relief granted by the Court.

35. CSC brings this action against Defendant because of Defendant's breach of the terms of the Escrow Agreement, breach of the Access Easement, and seeks monetary damages for Defendant's breaches, including but not limited to damages related to successful completion of the agreed-upon Infrastructure Work on the CSC Property, as well as specific performance.

## FIRST CLAIM FOR RELIEF
### (Breach of Escrow Agreement)

36. CSC incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

37. The Escrow Agreement is a valid and enforceable contract.

38. Defendant is bound to the terms of the Escrow Agreement.

39. CSC has met all of its obligations and conditions precedent required by the Escrow Agreement.

40. Defendant has breached the terms of Escrow Agreement by, including but not limited to, failing to complete the Infrastructure Work and corresponding construction repairs as required by the Escrow Agreement.

41. The Escrow Agreement gives CSC the right to assume management of the Infrastructure Work and construction related to that work and repairs if Defendant does not meet the deadline to complete such Infrastructure Work on or before December 31, 2024.

42. CSC has in fact assumed management of the Infrastructure Work and construction related to that work and repairs.

43. Pursuant to the terms of the Escrow Agreement, CSC is entitled to funds held by the Escrow Agent and any such additional costs for the Infrastructure Work, those exceeding the infrastructure Escrowed Funds, and Escrow Agent's costs and fees.

44. CSC has undertaken costly Infrastructure Work and construction related to that work and repairs, and, as such, is entitled to funds being held by Standard Title pursuant to the Escrow Agreement.

45. Accordingly, CSC was immediately entitled to the Escrow Funds being held by Standard Title when CSC incurred costs related to the Infrastructure Work.

46. As of the date of this Complaint and at Defendant's direction, Standard Title has not released the Escrow Funds in the amount that CSC has been damaged, and Standard Title continues to hold the same.

47. Despite CSC's entitlement to the Escrow Funds in the amount CSC has been damaged, Defendant has wrongfully objected to the disbursement of the Escrow Funds from Standard Title.

48. Defendant has breached the Escrow Agreement by, among other ways, objecting to the disbursement of the Escrow Funds by Standard Title.

49. CSC has undertaken costly Infrastructure Work and construction related to that work and repairs, and, as such, is entitled to funds being held by Standard Title pursuant to the Escrow Agreement.

50. As a direct and proximate result of Defendant's breach of the Escrow Agreement, CSC has suffered injury and is entitled to recover damages in excess of $75,000.00, including but not limited to compensatory, consequential and incidental damages.

51. CSC further seeks an order compelling Defendant to agree to the release of Escrowed Funds in the amount which CSC has been damaged with such funds currently being held by Standard Title to CSC based on Defendant's various breaches of the Escrow Agreement.

## SECOND CLAIM FOR RELIEF
**(Breach of Access Easement)**

52.     CSC incorporates the allegations set forth in the preceding paragraphs as if the same were fully set forth herein.

53.     The Access Easement is a valid, recorded agreement that imposes a clear and mandatory obligation on Defendant to construct the Access Road along the common boundary, approximately 50 feet wide, with 25 feet on each side of the line.

54.     Defendant breached the Access Easement by failing to construct the Access Road as required.

55.     CSC has performed all conditions applicable to it under the Access Easement and is entitled to the full benefit of the Access Road for private use by Defendant and CSC, their successors and assigns.

56.     Defendant's breach has caused CSC to incur costs and burdens, including those associated with securing the SCDOT Curb Cut in lieu of the Access Road that Defendant was obligated to construct.

57.     CSC seeks specific performance compelling Defendant to take all necessary steps, including executing and recording all documents, to ensure that the curb cut obtained by CSC from the South Carolina Department of Transportation becomes the sole property/right of CSC, in light of Defendant's failure to construct the Access Road as required by the Access Easement.

58. CSC requests an award of reasonable attorneys' fees and costs as the prevailing party in enforcing the Access Easement, as provided therein, in addition to such other relief as the Court deems proper to effectuate specific performance.

WHEREFORE, CSC prays for the following relief:

1. That CSC have and recover damages from Defendant plus pre-judgment and post-judgment interest;

2. That the Court order Defendant to agree to the release of the funds held in escrow by Standard Title in all amounts to which CSC is entitled be disbursed to CSC;

3. That the Court order that Defendant execute and record all necessary documents to ensure that the curb cut obtained by CSC from the South Carolina Department of Transportation becomes the sole property/right of CSC, in light of Defendant's failure to construct the Access Road as required by the Access Easement;

4. That CSC be awarded its costs and expenses, including attorneys' fees to the extent permitted by law; and

5. That the Court award CSC such additional relief as the Court deems just and proper.

>*/s/ Shawn V. Poole*
>Shawn V. Poole
>SC BAR NO. 103680
>Federal Bar ID No. 14251
>TUGGLE DUGGINS P.A.
>P.O. Box 2888
>Greensboro, NC 27402-2888
>Phone: (336) 378-1431
>*Counsel for Plaintiff Concrete Supply Co., LLC*

Jeffrey S. Southerland *(pro hac vice application forthcoming)*
NC State Bar No. 34221
jsoutherland@tuggleduggins.com
Alexandria B. Morgan *(pro hac vice application forthcoming)*
NC State Bar No. 59635
amorgan@tuggleduggins.com
Tuggle Duggins P.A.
400 Bellemeade Street, Suite 800 (27401)
P.O. Box 2888
Greensboro, NC 27402
Phone: (336) 378-1431
Facsimile: (336) 274-6590

*Counsel for Plaintiff Concrete Supply Co., LLC*